The document below is hereby signed.

Signed: September 28, 2018



_S. Martin Teel, Jr._
_United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |

MEMORANDUM DECISION AND ORDER
DENYING *MOTION TO CONVERT CHAPTER SEVEN TO CHAPTER ELEVEN*

This addresses the *Motion to Convert Chapter Seven to Chapter 11* (Dkt. No. 151) filed by a creditor, Teodora Aureliana Simu, seeking to convert this case to a case under Chapter 11 of the Bankruptcy Code (11 U.S.C.). The court held a trial on the *Motion to Convert* and, at the close of Simu's presentation of evidence, the debtor, Sharra Neves Carvalho, pursuant to Fed. R. Civ. P. 52(c), moved for the court to deny the *Motion to Convert*. As set forth in the following findings of fact and conclusions of law, the trial record, through the close of Simu's presentation of evidence, clearly establishes under the controlling law that conversion to Chapter 11 is not warranted in this case, and is barred by prior rulings of the court. Accordingly, pursuant to Rule 52(c), I will deny the *Motion to Convert*.

I

PRELIMINARY REASONS FOR DENYING THE *MOTION TO CONVERT*

The *Motion to Convert* renewed arguments, previously rejected by the court, that Simu had advanced in pursuing an adversary proceeding against Carvalho, Adv. Pro. No. 16-10001, and in pursuing a *Motion to Dismiss Bankruptcy Case for Bad Faith* (Dkt. No. 113) ("*Motion to Dismiss*"). One month prior to the conclusion of the adversary proceeding, Simu filed in the bankruptcy case her *Motion to Dismiss* as well as a *Motion to Remove Estate Trustee* and a *Motion for Leave to Sue Estate Trustee*.

In the adversary proceeding, Simu requested that the court deny Carvalho a discharge and, in the alternative, declare Carvalho's debts to Simu nondischargeable. In an oral decision of May 10, 2017, in the adversary proceeding, the court found that Carvalho had not engaged in any misconduct warranting a denial of discharge and that her debts to Simu were dischargeable. On May 11, 2017, the court entered a judgment in favor of Carvalho, declaring that Carvalho was entitled to a discharge and that Carvalho's debts owed to Simu were dischargeable.[1] Pursuant to an oral decision of October 5, 2017, and an order (Dkt. No. 148) entered on October 10, 2017, the

---

[1] Simu's appeal from the adversary proceeding judgment is pending as Civil Action No. 17-01018 in the District Court.

2

court, in the main case, denied Carvalho's *Motion to Dismiss*, finding that Carvalho had not engaged in bad faith acts or omissions that justified dismissal of her case.[2]

Within one week of entry of the order denying Simu's *Motion to Dismiss*, Simu filed her *Motion to Convert*, but presented no new evidence or claims in support of that motion. Instead, Simu relied upon the same evidence and arguments that she had presented in the adversary proceeding and in support of the *Motion to Dismiss*. Simu also relied on prior filings in the bankruptcy case (*e.g.*, Carvalho's bankruptcy schedules) that similarly showed no evidence of bad faith.

There are two reasons why those renewed arguments can be rejected as a preliminary matter. First, as noted in *In re Snyder*, 509 B.R. 945, 955 (Bankr. D.N.M. 2014), when, as here, a motion to dismiss for bad faith has been denied and no additional reasons are advanced for converting the case, the court should deny the motion to convert. *See also In re Quinn*, 490 B.R. 607, 621–22 (Bankr. D.N.M. 2012) ("It is clear . . . that the United States Trustee's objective is to force the Debtors to repay their creditors, whether through dismissal and the re-filing of a Chapter 11 case or through conversion to Chapter 11 under 11 U.S.C. § 706(b). Under these circumstances, it is not

---

[2] Simu's appeal from that order is pending as Civil Action No. 17-02352 in the District Court.

3

appropriate to compel the same end result through conversion to Chapter 11 when it is not appropriate to dismiss the Chapter 7 case to compel a re-filing under Chapter 11 by necessity."). Simu's motion to convert is a rehash of the arguments and factual contentions contained in the *Motion to Dismiss*, with no new grounds for relief presented, and thus can be denied on that basis. Having found no bad faith warranting dismissal of the case, there similarly is no bad faith warranting conversion of the case to Chapter 11.

Second, in deciding whether to dismiss a Chapter 7 case or convert it to Chapter 11, a court ought not consider misconduct that is addressed more specifically by other Bankruptcy Code provisions such as 11 U.S.C. § 523(a) (dealing with debts excepted from discharge) and 11 U.S.C. § 727(a) (dealing with denial of discharge). *See In re Snyder*, 509 B.R. at 950. The misconduct of Carvalho that was alleged by Simu falls within the provisions of § 523(a) and § 727(a) and formed the basis of the adversary proceeding filed by Simu. Simu already raised her claims in the adversary proceeding and they should not again be addressed now by way of her *Motion to Convert*, which relies upon a more general Bankruptcy Code provision. Moreover, the court's findings in the adversary proceeding rejecting claims of misconduct by Carvalho necessarily bar Simu from raising those claims of misconduct anew in pursuing the *Motion to Convert*.

4

Nevertheless, I will revisit the arguments anew to demonstrate that they fail to establish that conversion to Chapter 11 is warranted.

II

CONVERSION OF THE CASE TO CHAPTER 11
NOT BARRED BY CARVALHO'S RECEIPT OF A DISCHARGE

One relatively unusual feature of Simu's *Motion to Convert* is that Simu filed it only after Carvalho had received a discharge of her debts.  Upon denial of Simu's *Motion to Dismiss* on October 10, 2017, and pursuant to the earlier judgment of May 11, 2017, in the adversary proceeding dismissing Simu's objection to Carvalho's receiving a discharge, the court was required to enter a discharge in favor of the debtor.[3]  The clerk entered a

---

[3] Fed. R. Bankr. P. 4004(c)(1) provides that in a Chapter 7 case, "on expiration of the time fixed for objecting to discharge and for filing a motion to dismiss the case under Rule 1017(e), the court shall forthwith grant the debtor a discharge" with certain exceptions, two of particular pertinence being when:

> (B) a complaint, or a motion under § 727(a)(8) or (a)(9), objection to the discharge has been filed and not decided in the debtor's favor; [and]

> (C) a motion to dismiss the case under § 707 is pending[.]

By the time the court denied Simu's *Motion to Dismiss*, none of the exceptions applied.

5

discharge in the debtor's favor on November 13, 2017.[4]

Nevertheless, a motion under 11 U.S.C. § 706(b) to convert a case to Chapter 11 may be filed "at any time," and nothing in § 706(b) bars conversion of a Chapter 7 case to a Chapter 11 case after the debtor receives a discharge. *See Mason v. Young (In re Young)*, 237 F.3d 1168, 1173 (10th Cir. 2001) (dealing with a debtor's right under 11 U.S.C. § 707(a) to convert a case to another chapter "at any time"); *In re Mosby*, 244 B.R. 79, 83 (Bankr. E.D. Va. 2000) ("The statutory language is straightforward and seemingly confers an absolute right to convert "at any time" so long as the case was not previously converted to chapter 7 from some other chapter. . . .").

The Bankruptcy Code makes no provision for revocation of the discharge based on the post-discharge conversion of a Chapter 7 case to another chapter. *See* 11 U.S.C. § 706. Accordingly,

---

[4] In the adversary proceeding, Simu sought a stay of all proceedings pending her appeal of the judgment. At the hearing of October 5, 2017, the court declined to grant a stay (and a written order denying the motion for a stay was entered on November 28, 2017 (Adv. Pro. No. 16-10001, Dkt. No. 200)). Although Simu filed a notice of appeal (Dkt. No. 158) from the order of October 10, 2017 (Dkt. No. 148) denying the *Motion to Dismiss*, she did not seek a stay pending the appeal regarding that order.

Carvalho's discharge would remain in place if the case were converted to Chapter 11.[5]

Claims discharged by way of a Chapter 7 discharge remain claims against the bankruptcy estate (but not against the debtor personally) once the case is converted to another chapter.  *See In re Mosby*, 244 B.R. at 87.  *See also In re Carrow*, 315 B.R. 8, 21 (Bankr. N.D.N.Y. 2004).  Other decisions, without any meaningful discussion of the issue, take the contrary and erroneous view that the discharged debts no longer remain debts to be addressed in the case after the case is converted to another chapter.  *See In re Santos*, 561 B.R. 825, 828 (Bankr. C.D. Cal. 2017) (citing *In re Starling*, 359 B.R. 901, 911 (Bankr. N.D. Ill. 2007); and *In re Marcakis*, 254 B.R. 77, 82 (Bankr. E.D.N.Y. 2000)).  I will not deny the *Motion to Convert* based on that erroneous view.  If the *Motion to Convert* were granted, Carvalho's discharged debts would remain claims enforceable

---

[5] Similarly, if the order denying the *Motion to Dismiss Case for Bad Faith* were vacated, and the case were dismissed, that would not vacate Carvalho's discharge of the debts owed to Simu.  *See In re Henderson*, 472 B.R. 579, 581 (Bankr. D. Colo. 2012); *In re Shell*, 14 B.R. 1010, 1011 (Bankr. E.D. Wis. 1981).  This may have an impact on whether Simu elects to continue to pursue her appeal of the denial of the *Motion to Dismiss Case for Bad Faith*.  So long as Simu's claims remain discharged, she would gain nothing by obtaining a dismissal of the case.  If Simu loses her appeal of the adversary proceeding judgment, thus leaving her discharge in effect, her appeal of the order denying the *Motion to Dismiss Case for Bad Faith* will be pointless.

against the bankruptcy estate to be addressed in the Chapter 11 case.

Nevertheless, Simu's *Motion to Convert* will be denied because the motion rests on the erroneous argument that a meaningful result could be achieved by converting this case to Chapter 11, and therefore the debtor necessarily proceeded in bad faith by filing a case under Chapter 7 rather than Chapter 11.

III

THE ARGUMENT BASED ON CARVALHO'S ALLEGED ABILITY
TO FUND A CHAPTER 11 PLAN FOR THE BENEFIT OF CREDITORS

Simu's *Motion to Convert* focuses on Carvalho's income from Elite Insurance & Consulting Services, LLC ("Elite"), and urges that such income enables Carvalho to pay her creditors. Simu argues that a debtor's ability to pay creditors is an important factor in deciding whether to convert a case from Chapter 7 to Chapter 11. *See* Dkt. No. 151, at 5 (citing *In re Karlinger-Smith*, 544 B.R. 126, 134 (Bankr. W.D. Tex. 2016)).[6] This same

---

[6] Because the court found that Carvalho had no meaningful ability to repay her debts, it was unnecessary for the court to address whether an ability to pay would constitute bad faith in filing a Chapter 7 case that would warrant dismissing or converting the case. Some decisions hold that a debtor's ability to repay outstanding debt is not enough to establish bad faith in filing a Chapter 7 petition such as to warrant dismissal or conversion to Chapter 11. *See, e.g., In re Snyder*, 509 B.R. at 951, 956. Still other decisions hold to the contrary. *See, e.g., Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber)*, 489 B.R. 570, 574 (8th Cir. B.A.P. 2013) ("Nothing in § 706(b) suggests that a court may not focus on ability to pay under that section where the Debtor is an individual with primarily business debts.")

argument was advanced, and rejected, when Simu pursued her *Motion to Dismiss*, with the court finding that Carvalho had no meaningful ability to pay her creditors, and had not filed the case in bad faith. *See* Dkt. No. 203, at 43-45.

At the trial on Simu's *Motion to Convert*, by failing to present any new evidence, Simu did not carry her burden of showing that conversion to Chapter 11 is warranted based on Carvalho's income. In denying Simu's *Motion to Dismiss,* this court found that Carvalho had not engaged in bad faith in continuing to draw money from Elite's bank account as compensation for work performed because Carvalho withdrew such compensation for the purpose of supporting herself and was not living a lavish lifestyle.

Carvalho does not have a meaningful ability to pay her creditors in a Chapter 11 case, and her decision to file a case under Chapter 7 instead of a case under Chapter 11 was not made in bad faith. As the court explained in denying the *Motion to Dismiss*, Carvalho's annual adjusted gross income from operating Elite has never been more than $75,000. She has fairly modest living circumstances: she resides in a 554 square-foot cooperative housing unit she purchased with her mother in 1999 that also includes a single parking space. She owns a single vehicle, a 2008 Volkswagen Passat with mileage of approximately 90,000 miles. Nothing shows that she is living extravagantly.

9

She made trips to Florida during the bankruptcy case but those were to visit her relatives and her ailing grandmother. Although she eats out several times a month, she frequently does so in connection with meeting with clients. Moreover, as a busy professional running a business, it is not surprising that she eats out on occasion instead of fixing a meal at home. She visits a hair salon approximately every five to seven weeks, and that is not an extravagance.

In short, this is not a case in which the debtor is living lavishly and has adequate means to fund a meaningful Chapter 11 plan. As the United States Trustee observed in opposing the *Motion to Convert*,[7] the debtor:

> [Carvalho] reports total mortgage and housing expenses on Line 4 of Schedule J of $1,652.25; whereas the IRS Standard for Mortgage/Rent plus Non-Mortgage expenses in DC for the time period she filed is $2,153. Her other expenses are similarly modest. As a result, there does not appear to be expenses that the Debtor could reduce in order to free up money to pay her creditors.

Dkt. No. 185 at 3 (footnotes omitted). In an accompanying footnote, the United States Trustee observed:

---

[7] The United States Trustee is not to be confused with the Chapter 7 trustee. The duties of the United States Trustee, who is appointed by the Attorney General, include, *inter alia*, supervising the administration of cases under Chapter 7 and 11, taking appropriate actions to prevent undue delay in the progress of bankruptcy cases, and taking positions regarding the confirmability of Chapter 11 plans. 28 U.S.C. § 586(a)(3). The United States Trustee, in effect, was an independent watchdog in the case, had no financial stake in the case, and had no axe to grind.

> Plus, had this been a consumer case, the Debtor would almost certainly have passed the chapter 7 Means Test, since her claimed expenses are similar to or below the applicable IRS Standards. Since the Means Test is one of the primary metrics to determine whether a debtor has the ability to make payments to her creditors, this further reinforces the conclusion the Debtor's business income is insufficient to make payments to creditors through a chapter 11 plan.

*Id.* at 3 n.4.[8]

Moreover, conversion is inappropriate, as futile, when no confirmed plan could be achieved by the debtor. A Chapter 11 case entails substantial administrative expenses that, under 11 U.S.C. § 1129(a)(9)(A), are entitled to payment upon the effective date of a confirmed plan as a condition to the plan being confirmed.[9] Because the debtor has no meaningful

---

[8] When a debtor whose debts are primarily consumer debts flunks the means test of 11 U.S.C. § 707(b)(2)(A), the case is presumed to be an abuse of Chapter 7 and, as such, is subject to dismissal under § 707(b)(1) unless, under § 707(b)(2)(B), the debtor rebuts the presumption of abuse, or falls within an exception listed in § 707(b)(2)(D).

[9] Professionals employed by the debtor as a Chapter 11 debtor in possession (or by a Chapter 11 trustee if the debtor were displaced as a debtor in possession) would be entitled to an administrative claim against the estate. To achieve a confirmed plan, the debtor would be required to file a proposed disclosure statement and a proposed plan; to attend a hearing on the disclosure statement; upon approval of the disclosure statement, to disseminate the disclosure statement and ballots for the purpose of soliciting votes on the plan; and, finally, to attend a confirmation hearing. Additionally, the debtor would be required to incur the expense of filing monthly operating reports and would have to pay to the United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) of at least $325 per quarter (and more if the debtor's quarterly disbursements exceed $15,000).

11

disposable income with which to fund the payment of such administrative expenses, no confirmed plan could be achieved if the *Motion to Convert* were granted, and conversion to a Chapter 11 case therefore would be futile.[10]

IV

### THE ARGUMENT THAT CARVALHO WAS NOT AUTHORIZED TO OPERATE ELITE

In support of her adversary proceeding and her motion to dismiss Carvalho's bankruptcy case, Simu argued that Carvalho had improperly continued to operate Elite without authorization after filing her bankruptcy case. In the adversary proceeding, Simu utilized this argument to advance her claim for denial of a discharge based on Carvalho's alleged misconduct. Simu has now advanced this claim to support her motion for conversion of this case to a case under Chapter 11. As already explained, the misconduct alleged by Simu is specifically addressed by 11 U.S.C. § 727(a) and thus is alleged misconduct that should be examined in the context of denial of discharge rather than in the context of a motion to convert a Chapter 7 case to a case under Chapter 11. In any event, looking past that barrier to the merits of Simu's allegation of misconduct by Carvalho, for reasons

---

[10] As the United States Trustee observed in opposing the *Motion to Convert*: "With such little income, the Debtor is unlikely to be able to pay her chapter 11 administrative expenses, let alone make payments to her creditors." Dkt. No. 185 at 2.

12

explained at length in the adversary proceeding and in the court's oral decision regarding Simu's *Motion to Dismiss*, and recounted summarily below, Simu's argument was frivolous and there was and will continue to be no misconduct in Carvalho's continued postpetition operation of Elite.

    A. Carvalho's Management and Operation of Elite While in Chapter 7 Was Not Improper.

On October 5, 2017, the court held a hearing on Simu's *Motion to Dismiss*, and in an oral decision explained why the *Motion to Dismiss* would be denied. The court explained that Simu either failed to understand or failed to acknowledge that, by virtue of Elite's status as a limited liability company (LLC), the assets of Elite were not property of the bankruptcy estate administered by the Chapter 7 trustee, and that Simu's *Motion to Dismiss* had relied on decisions that were clearly inapposite because they related to a debtor's continued operation of a sole proprietorship as opposed to an LLC. Nevertheless, in her *Motion to Convert*, filed after the court denied Simu's *Motion to Dismiss*, Simu asserted the exact same arguments regarding the

13

assets of Elite and relied on the same decisions that the court had already previously advised were inapplicable in this case.[11]

The assets of Elite did not become property of the estate when Carvalho filed her petition, and Carvalho did not act improperly by exercising control over the assets of Elite as manager of that LLC. The trustee was aware of Carvalho's continued management and operation of Elite and he knew and expected that Carvalho would continue drawing sums from Elite's bank account as compensation for her work. Although, upon the filing of Carvalho's petition, Carvalho's ownership interest became property of the estate, the trustee viewed that interest as not susceptible of generating any meaningful funds that could be distributed to creditors. If the trustee attempted to step in and assert control over Elite, on the basis of the estate's shareholder interest in Elite, to make himself manager of the company in place of Carvalho, but still employed Carvalho to perform the day-to-day work of selling and servicing insurance

---

[11] For example, in the *Motion to Convert*, Simu relied upon In *re Nakhuda*, 14-41156-RLE, 45-46 (Bankr. N.D. Cal. Apr. 27, 2015) and *Nakhuda v. Mansdorf (In re Nakhuda)*, NC-14-1235-TaPaJu, 5-6 (B.A.P. 9th Cir. Mar. 2, 2015). *See* Dkt. No. 151, at 7. However, the court had already advised at the hearing held on October 5, 2017, prior to Simu's filing of the *Motion to Convert*, that the bankruptcy case examined in the two *Nakhuda* decisions is easily distinguished from Carvalho's case and thus the *Nakhuda* decisions are inapplicable to Carvalho's case. *See* Dkt. No. 203, at 7, 43-46.

policies, Carvalho would still be entitled to draw reasonable compensation for her services.

Meanwhile, if the trustee asserted control over Elite and chose to terminate Carvalho's employment (and compensation for work performed) then, because Carvalho was not subject to any non-compete agreement, Carvalho was free to open a competing business with Elite and bring the same customers she had been servicing at Elite to her new company.  If this occurred, the trustee concluded, Elite would not be able to generate meaningful income for the Chapter 7 estate.

Similarly, if the trustee had attempted to sell Carvalho's interest in Elite to another person or entity, Carvalho, again, was free to open a competing business and bring with her the customers she had been servicing at Elite.  The trustee determined that he would not be able to sell Carvalho's ownership interest in Elite because of the high risk of Carvalho taking Elite's clients with her after the sale.[12]  Accordingly, for the foregoing reasons, the trustee saw no possible benefit to the estate or to creditors in either taking steps to supplant Carvalho as manager of Elite or endeavoring to sell the ownership interest.  On the advice of her counsel, which was consistent with the foregoing, Carvalho continued to operate Elite and to

---

[12]  Simu never made an offer to the trustee to purchase Carvalho's ownership interest in Elite.

15

make draws from Elite to support herself.  The trustee, knowing of Carvalho's conduct, allowed Carvalho to continue managing and operating Elite and removing funds from Elite as compensation for her work.  Thus, Carvalho's action in continuing to operate Elite while her Chapter 7 case remained pending was not improper.

These findings regarding the *Motion to Dismiss* were reinforced by a written decision of November 29, 2017, (Dkt. No. 184) denying Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*.  The written decision upheld the Chapter 7 trustee's decision that Carvalho's ownership interest in Elite was not worth administering on behalf of creditors, and should be abandoned to Carvalho via a closing of the estate, and upheld the Chapter 7 trustee's view that Carvalho's transfers of funds from Elite to herself constituted reasonable compensation for work performed in operating the company, and did not warrant any attempt by the trustee, on behalf of the estate, to sue Carvalho to recover such distributions.

    B.   Even More Plainly, Carvalho Would Have Authority to Operate Elite in Chapter 11.

Carvalho plainly would have authority to operate Elite upon conversion of her case to Chapter 11.  A debtor in a Chapter 11 case serves as a debtor in possession under 11 U.S.C. § 1101(1), entitled to exercise the powers of a trustee under 11 U.S.C. § 1107(a) unless the court displaces the debtor in possession by

16

appointing a trustee. Simu, who requested for the appointment of a trustee upon conversion of this case to Chapter 11, made no showing that, if the case were converted to a case under Chapter 11, the appointment of a trustee to displace Carvalho as a debtor in possession would be warranted.

Moreover, by the time the court heard the *Motion to Convert*, such a trustee would not have been entitled to take steps to displace Carvalho as manager of Elite. By the time of the hearing on the *Motion to Convert*, Carvalho's shareholder interest in Elite was no longer property of the estate. This is because the court had closed the case on December 27, 2017, pursuant to the *Memorandum Decision and Order Closing Case and Discharging Trustee* (Dkt. No. 200).[13] Simu took no appeal from that order. Under 11 U.S.C. § 554(c), upon entry of the order closing the debtor's case, the property of the Chapter 7 estate that Carvalho listed on her schedules pursuant to 11 U.S.C. § 521(a)(1) was abandoned to Carvalho. Accordingly, Carvalho's shareholder interest in Elite revested in Carvalho and was no longer estate property.[14] With Carvalho's shareholder interest in Elite no

---

[13] In the same *Memorandum Decision and Order*, I directed the clerk to reopen the case for the purpose of allowing Simu to continue to pursue her belated *Motion to Convert* and to address Carvalho's *Motion for Sanctions* (Dkt. No. 187) filed on November 29, 2017.

[14] The reopening of the case for purposes of addressing Simu's *Motion to Convert* and Carvalho's associated *Motion for Sanctions* did not undo that result.

17

longer being estate property, a Chapter 11 trustee would not have any shareholder rights to exercise to displace Carvalho as manager of Elite.  Yet Simu did not withdraw the *Motion to Convert* once these events played out.

Simu's *Motion to Convert* was premised on her desire to have the earnings from Elite that Carvalho had acquired postpetition and further future earnings for services performed by Carvalho treated, pursuant to 11 U.S.C. § 1115(a), as property of an estate in Chapter 11 that could be used to fund a Chapter 11 plan.  The real issue is thus the income Carvalho earns from Elite, which would be property of the bankruptcy estate if this case were converted to Chapter 11.  However, as already discussed above, there has been no showing that, after Carvalho uses her income from Elite to meet her modest living expenses, anything would be left to make payments to creditors under a Chapter 11 plan.  Therefore, conversion to Chapter 11 is not warranted.

Even if Carvalho's interest in Elite were still property of the estate upon conversion to Chapter 11, Carvalho would serve as a debtor in possession exercising the powers of a trustee pursuant to 11 U.S.C. § 1107(a) with respect to the property of the estate.  Accordingly, she unquestionably would be authorized to operate Elite.  Simu (who requested that upon conversion to Chapter 11, a trustee be appointed) made no showing that the appointment of a trustee would be warranted in Chapter 11 to

displace Carvalho as a debtor in possession. Therefore, because Carvalho would be authorized to continue operating Elite upon conversion of this case, Simu's objections to Carvalho's continued operation of Elite do not justify conversion of Carvalho's case.

V

THE ARGUMENT THAT CARVALHO HAS
NOT COMPLIED WITH HER DUTIES UNDER THE BANKRUPTCY CODE

In support of the motion to convert, Simu contends:

> Carvalho has inflated her expenses to disguise her financial well-being, she has illegally transferred assets to herself on an ongoing basis, and failed to make any semblance of a candid and full disclosure of her affairs to Simu or the Court. This case is rife with procedural "gymnastics" intended to defeat any semblance of compliance with Bankruptcy Code for the benefit of Carvalho's creditors.

Dkt. No. 151, at 9. As Simu did when pursuing a denial of a discharge for Carvalho in the adversary proceeding and when seeking dismissal of Carvalho's case, Simu alleges that Carvalho undervalued her interest in Elite; continued making unauthorized and improper withdrawals from Elite; refused to produce documents; and altered documents. As noted already, misconduct that the Bankruptcy Code specifically addresses as a basis for denying a debtor a discharge under 11 U.S.C. § 727(a) ought not be considered as a basis for converting a case to Chapter 11. *In re Snyder*, 509 B.R. at 950.

In any event, the court rejected all of these allegations of misconduct in dismissing the adversary proceeding complaint and in denying the *Motion to Dismiss*. The court found that Simu's allegations of misconduct were unfounded and no other misconduct had been demonstrated. It therefore granted the debtor a discharge and found that there was no demonstrated bad faith warranting dismissal of the case. There being no bad faith warranting dismissal of the case, and no new grounds having been raised in support of conversion, the *Motion to Convert* must be denied as well.

VI

CONCLUSION

In her *Motion to Convert*, Simu relied upon the same grounds already considered and rejected by the court in the adversary proceeding and in the litigation of the *Motion to Dismiss*. Those grounds do not warrant converting the case to Chapter 11. It is

ORDERED that Simu's motion (Dkt. No. 151) to convert this case to Chapter 11 is DENIED.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.