The document below is hereby signed.

Signed: September 30, 2018

S. Martin Teel, Jr.
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHARRA NEVES CARVALHO, | ) | Case No. 15-00646 |
| | ) | (Chapter 7) |
| Debtor. | ) | |

## MEMORANDUM DECISION AND ORDER RE MOTION FOR SANCTIONS

Teodora Aureliana Simu is a creditor in this bankruptcy case. Simu, through her attorney, Matthew August LeFande, filed a *Motion to Convert Chapter Seven to Chapter Eleven* (Dkt. No. 151), renewing contentions that this court had already rejected in disposing of other litigation in this case. The debtor, Sharra Neves Carvalho, then filed a *Motion for Sanctions* (Dkt. No. 187) and an accompanying memorandum in support thereof (Dkt. No. 188). In her *Motion for Sanctions*, Carvalho requests the court to levy sanctions against Simu and LeFande pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and this court's inherent authority, for their filing and pursuit of Simu's *Motion to Convert*. For the following reasons, I will grant Carvalho's *Motion for Sanctions* as to LeFande but not as to Simu.

I

FACTS

Prior to the commencement of this bankruptcy case, both Carvalho and Simu at one point had been in business together, jointly operating Elite Insurance & Consulting Services, LLC ("Elite").  Conflict between the two arose and Simu resigned her position at Elite and sued Carvalho in the Superior Court of the District of Columbia, asserting claims related to Carvalho's operation of Elite.  Simu ultimately recovered a $90,250 monetary judgment against Carvalho.

Carvalho then filed her petition commencing this bankruptcy case under Chapter 7 of the Bankruptcy Code (11 U.S.C.) on December 15, 2015.  On her bankruptcy schedules, Carvalho listed as debts Simu's claim pursuant to the $90,250 judgment and a disputed unsecured claim of $374,741.45 asserted by Simu for attorney's fees incurred for services that LeFande provided Simu in the Superior Court case.  See Dkt. No. 1, at 22.  As of the petition date, because Simu had left Elite and had not been replaced, Carvalho owned a 100% equity interest in Elite.  When Carvalho filed her petition, that equity interest in Elite became property of the estate under 11 U.S.C. § 541(a)(1).  The intense conflict that already existed between Carvalho and Simu prior to the commencement of the bankruptcy case almost immediately

2

presented in litigation within the bankruptcy case and within the related adversary proceeding that Simu filed.

A.   Simu's Unsuccessful Adversary Proceeding to Deny
Carvalho a Discharge

On January 5, 2016, shortly after Carvalho filed her petition commencing this bankruptcy case, Simu commenced an adversary proceeding (Adv. Pro. No. 16-10001) against Carvalho. In the adversary proceeding, Simu requested the court to either deny Carvalho a discharge or, in the alternative, deem Carvalho's debt to Simu nondischargeable.

Among many claims raised by Simu in support of denial of discharge or a determination of nondischargeability were claims that Carvalho knowingly and fraudulently made false oaths and accounts in her petition and to the Chapter 7 trustee at the meeting of creditors; that she withheld from the Chapter 7 trustee information relating to her property or financial affairs; and that, since filing her petition, Carvalho had transferred money from Elite to herself without giving notice to or obtaining the consent of the Chapter 7 trustee and the court and had done so with the intent to hinder, delay, or defraud Simu, the Chapter 7 trustee, and the court.

After Simu presented her evidence at trial and before Carvalho presented her defense, upon Carvalho's motion for judgment, the court held that Simu had failed to demonstrate that Carvalho had made false oaths in her petition or at the meeting

3

of creditors, or that Carvalho had withheld information from the
court or from the Chapter 7 trustee.  The only claim remaining
when Carvalho began presenting evidence at trial was the claim
for denial of discharge stemming from Carvalho's postpetition
operation of Elite and withdrawals of money from that LLC.

In an oral decision issued at the conclusion of the trial on
May 10, 2017, the court issued its findings of fact with great
detail.  The court found that, shortly after commencement of the
bankruptcy case, Carvalho's counsel had received permission from
Bryan Ross, the Chapter 7 trustee, for Carvalho to continue
operating Elite and that Ross, in exercising his discretion to
permit Carvalho to continue operating Elite, did not believe or
intend that Carvalho would do so without compensation.  The court
found that Ross had never instructed Carvalho to stop operating
the company or removing money from Elite; that Carvalho's
attorney had advised Carvalho to continue withdrawing money from
Elite in amounts that were reasonably consistent with the money
she had removed from Elite as compensation for her operation of
Elite in the past; and that, in continuing to operate Elite and
withdraw money from Elite, Carvalho had followed the directions
of the Chapter 7 trustee, as relayed to her by her counsel, and
had not acted with intent to hinder, delay, or defraud any
creditor.  The court also addressed multiple provisions of the
Bankruptcy Code that Simu had raised and relied upon in

4

presenting her arguments and explained their irrelevance to the case.

On May 11, 2017, pursuant to the oral decision issued at the conclusion of the adversary proceeding trial on May 10, 2017, the court issued a *Judgment* (Adv. Proc. No. 16-10001, Dkt. No. 171) in favor of Carvalho.  The *Judgment* directed that Carvalho was entitled to have a discharge issued in the bankruptcy case, and decreed that the debts owed to Simu were not excepted from the forthcoming discharge.

    B.  Simu's Related Efforts in the Bankruptcy Case, a Story of Three Motions Focusing Largely on Carvalho's Continued Operation of Elite

On April 14, 2017, about one month prior to the commencement of the trial in the adversary proceeding on May 8, 2017, Simu filed in Carvalho's bankruptcy case three motions:

- a *Motion to Remove Estate Trustee* (Dkt. No. 111) seeking to remove Ross as the trustee;

- a *Motion for Leave to Sue Estate Trustee* (Dkt. No. 112), seeking leave to sue Ross; and

- a *Motion to Dismiss Case for Bad Faith* (Dkt. No. 113).

After the motions were fully briefed, in response to an instruction from the court at a hearing, Simu filed a *Unified Motion to Dismiss Bankruptcy Case for Bad Faith Motion to Remove Estate Trustee Motion for Leave to Sue the Estate Trustee* (Dkt. No. 131) ("*Unified Motion*") incorporating all three motions, with

the *Unified Motion* serving also as a motion for summary judgment
on all three motions.  Simu filed that *Unified Motion* on July 28,
2017, more than two months after the court issued its *Judgment* in
the adversary proceeding on May 11, 2017.  In response, Carvalho
filed a cross-motion for summary judgment (Dkt. No. 134).

Simu's *Unified Motion* contained 51 pages of "material facts
not in dispute" (focusing largely on alleged acts of Carvalho
that had been the subject of the adversary proceeding) and argued
for summary judgment on the motions in an additional 47 pages.
In comparison, Carvalho filed an opposition to the *Unified Motion*
that contained 40 pages responding to Simu's account of the
"material facts not in dispute" and only 18 pages of argument.
Bryan Ross, the chapter 7 trustee assigned to Carvalho's case,
filed an opposition consisting of a five-page statement of facts
and 23 pages of argument.

    1.    Denial of the *Motion to Dismiss Case for Bad Faith*

In regards to the *Motion to Dismiss Case for Bad Faith*
incorporated in the *Unified Motion*, Simu emphasized that Carvalho
had filed the case in response to Simu's Superior Court judgment
against her and Simu's motion for a charging order on that
judgment; that Carvalho had filed the case primarily to avoid a
large, single debt; and that, while Carvalho was not making any
attempt to pay off her outstanding debts to creditors, she
nevertheless was continuing to pay her attorneys.  Simu claimed

6

that Carvalho acted illegally in continuing, postpetition, to operate Elite and withdraw money from Elite.  Specifically, Simu claimed: "It is the profound fraud perpetrated on this Court from the onset of this bankruptcy proceeding, the undervaluation, maintenance and exploitation of Elite Insurance & Consulting Services, LLC as an unliquidated cash cow solely for the ongoing benefit of the Debtor that now demands dismissal."  Dkt. No. 131-4, at 6.

In concluding the portion of the *Unified Motion* regarding the *Motion to Dismiss Case for Bad Faith*, Simu argued that Carvalho "has illegally transferred assets to herself on an ongoing basis, and failed to make any semblance of a candid and full disclosure of her affairs to Simu or the Court" and noted: "This case is rife with procedural "gymnastics" intended to defeat any semblance of compliance with Bankruptcy Code for the benefit of Carvalho's creditors.  All of the facts and circumstances of this case now dictate dismissal of this case for cause under 11 U.S.C. § 707(a)."  Dkt. No. 131-4, at 16.

On October 5, 2017, the court held a hearing on the *Unified Motion*, and by way of an oral decision, the court granted Carvalho's cross-motion for summary judgment and ruled that Simu's *Motion to Dismiss Case for Bad Faith* had to be denied.  At the hearing of October 5, 2017, Carvalho, the Chapter 7 trustee, and the court addressed Simu's counsel's repetition of arguments

7

that not only were premised on misunderstandings of the
Bankruptcy Code but also had already been dismissed by the court.
In denying Simu's *Motion to Dismiss Case for Bad Faith*, the court
repeated rulings it made after the adversary proceeding trial and
explained the flaws in Simu's arguments.  The court explained
that:

- Simu either failed to understand or acknowledge that
  the chapter 7 trustee lacked the legal authority to
  seize Elite's assets by virtue of Elite's status as a
  limited liability company (LLC);

- Simu had repeated allegations of Carvalho's intentional
  undervaluation of her interest in Elite and of her bad
  faith in removing money from Elite when the court had
  already ruled in the adversary proceeding that the
  valuation was appropriate and that Carvalho had not
  demonstratively acted in bad faith; and

- Simu had relied on case law that could be distinguished
  on the basis of relating to a debtor's continued
  operation of sole proprietorships as opposed to LLCs.

These details regarding the court's oral ruling of October
5, 2017, are significant because on October 16, 2017, within two
weeks after that ruling (and six days after entry of a written
order (Dkt. No. 148) denying Simu's *Motion to Dismiss Case for*

8

*Bad Faith*, based on that oral decision)[1] Simu filed her *Motion to Convert*, the subject of Carvalho's *Motion for Sanctions*, in which Simu asserted the exact same arguments and relied on the same case law that the court had dismissed in its thoroughly explained oral opinion of October 5, 2017.  Simu's counsel was present in court on October 5, 2017, to hear the oral decision and a recording of that hearing was available on the docket the very next day.  Nevertheless, on October 16, 2017, Simu filed her *Motion to Convert* premised on the same rejected arguments.

> 2. Disposition of Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*

As to Simu's *Motion to Remove Estate Trustee*, Simu argued that Ross, as trustee, had unjustifiably allowed Simu to continue operating and withdrawing money from Elite; had improperly accepted Carvalho's valuation of Elite as worth $1; had improperly decided that the ownership interest in Elite could not be liquidated for the benefit of creditors; had unjustifiably failed to pursue any action against Carvalho regarding the postpetition distributions she received from Elite; and had acted in an effort to benefit Carvalho's attorneys rather than the

---

[1] At the hearing of October 5, 2017, the court denied both parties' motions for summary judgment regarding Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee,* and set those two motions for an evidentiary hearing.

bankruptcy estate.  Simu made similar arguments in support of her
*Motion for Leave to Sue Estate Trustee*.

On November 29, 2017, after a trial held on November 20,
2017, the court issued a *Memorandum Decision* (Dkt. No. 183) and
an order (Dkt. No. 184) denying Simu's *Motion to Remove Estate
Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*.  As to
Ross's decision that the ownership interest in Elite was not
worth administering and should be abandoned to Carvalho via a
closing of the estate, the court examined at length Ross's
evaluation and concluded that "Ross acted with diligence and made
a good faith and sound exercise of his business judgment in
exercising his discretion and determining that Carvalho's
interest in Elite was not worth administering."  Dkt. No. 183, at
24.

Ross viewed Carvalho's withdrawals of funds from Elite as
reasonable compensation for work Carvalho performed in operating
the company.  He viewed the $64,647 in profit distributions from
Elite to Carvalho as, in substance, compensation to Carvalho for
her work as the sole manager of Elite, and viewed that $66,647 as
fair and reasonable compensation that the estate would have had
to pay Carvalho had Ross chosen to take over the operation of
Elite and then, of necessity, employed Carvalho to do the actual
work of running Elite's insurance business.  He believed that if
he sued Carvalho on behalf of the estate to recover such

10

distributions, he was not likely to succeed and the professional
fees that would be incurred in pursuit of such an action would
result in an administratively insolvent estate, leaving nothing
to distribute to creditors after payment of administrative
expenses.  He therefore did not believe that the estate had a
basis for seeking to recover the money withdrawn by Carvalho and,
at any rate, did not think it was worth the necessary time and
expense to the estate to pursue recovery of such sums even if the
estate had a basis for doing so.

    C.  Simu's *Motion to Convert*

    As already noted previously, although Simu's counsel was
present in court on October 5, 2017, to hear the oral decision
denying the *Motion to Dismiss Case for Bad Faith*, and although a
recording of that hearing was available on the docket the very
next day, on October 16, 2017, within two weeks after the court's
oral ruling of October 5, 2017, Simu filed her *Motion to Convert*,
asserting the exact same arguments and relying on the same case
law that the court had dismissed in its thoroughly explained oral
opinion of October 5, 2017.  Simu's *Motion to Convert* discussed
many topics familiar from previous motions and claims the court
has dismissed or denied, referencing Carvalho's valuation of her
interest in Elite as one dollar, noting that Carvalho "has a
business with assets, ongoing income, and a separate business
infrastructure making a Chapter Eleven reorganization

appropriate[,]" characterizing Carvalho's income for the year
2016 as evidence of her ability to repay her debt to Simu, and
characterizing the postpetition transfers of money from Carvalho
to Elite as "illegal" and a "profound fraud perpetrated on this
Court from the onset of this bankruptcy proceeding . . . ." *See*
Dkt. No. 151, at 6.  Simu mostly emphasized the argument that
Carvalho's continued operation of Elite throughout her bankruptcy
case was illegal and, in doing so, cited *In re Nakhuda*, No.
14-41156-RLE, 2015 WL 1943450 (Bankr. N.D. Cal. Apr. 27, 2015),
and *Nakhuda v. Mansdorf (In re Nakhuda)*, No. NC-14-1235-TaPaJu,
2015 WL 873566 (B.A.P. 9th Cir. Mar. 2, 2015), which the court
had already advised on October 5, 2017, were easily distinguished
from Carvalho's case and therefore inapplicable.  Simu also
alleged that Carvalho "failed to make any semblance of a candid
and full disclosure of her affairs to Simu or the Court[,]"
thereby repeating an argument the court had already dismissed
multiple times.

     D.   The *Motion for Sanctions* and Simu's Unsuccessful
         Continued Pursuit of the *Motion to Convert*

     In response to Simu's *Motion to Convert*, Carvalho served
Simu with her *Motion for Sanctions* on October 17, 2017,
triggering the safe harbor provision of Fed. R. Bankr. P.
9011(c)(1)(A), which granted Simu 21 days to withdraw the *Motion
to Convert*.  In response to a filing from Carvalho requesting to
shorten the amount of time for Simu to respond to the *Motion for*

*Sanctions*, the court ordered that the deadline for Simu to respond to the *Motion for Sanctions*, as set forth in Fed. R. Bankr. P. 9011(c)(1)(A), was November 7, 2017, and ordered that unless Simu withdrew the *Motion to Convert* by that date Carvalho could file her *Motion for Sanctions* related to the *Motion to Convert* after the expiration of the deadline. *See* Dkt. No. 156. Simu did not withdraw her *Motion to Convert* and, on November 29, 2017, Carvalho filed her *Motion for Sanctions* (Dkt. No. 187) and a memorandum in support of that motion (Dkt. No. 188).

On November 29, 2017, after the deadline for Simu to withdraw the *Motion to Convert* had expired, the court issued a written decision denying Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*. The written decision, in effect, approved Ross's decision that the ownership interest in Elite was not worth administering on behalf of creditors and should simply be abandoned to Carvalho via a closing of the estate. The opinion also approved Ross's view that Carvalho's continued withdrawal of funds from Elite constituted reasonable compensation for work performed in operating the company, and did not warrant any attempt by Ross, on behalf of the estate, to sue Carvalho to recover such distributions. The written decision of November 29, 2017, thus made even clearer that conversion of Carvalho's case to a case under Chapter 11 was unwarranted.

13

Even after that decision of November 29, 2017, LeFande decided to continue to press Simu's *Motion to Convert*.  On December 13, 2017, LeFande filed a timely opposition to the *Motion for Sanctions*.  By then, the court's dismissal of Simu's claims in the adversary proceeding and denial of Simu's *Motion to Dismiss Case for Bad Faith*, *Motion to Remove Estate Trustee*, and *Motion for Leave to Sue Estate Trustee* should have made it clear to LeFande that the grounds on which he pursued the *Motion to Convert* were without merit and had already been rejected by the court.  In opposing the *Motion for Sanctions*, LeFande could have relied upon the court's decision of November 29, 2017, as warranting his withdrawing the *Motion to Convert*, and consented to a denial of the *Motion to Convert*.  Instead, he plowed on, pressing forward on the *Motion to Convert*, which was doomed to fail, subjecting Carvalho and the court to an unnecessary hearing on the *Motion to Convert* on January 3, 2018.

On December 27, 2017, pursuant to a *Memorandum Decision and Order Closing Case and Discharging Trustee* (Dkt. No. 200), the court closed Carvalho's case and immediately reopened it for the

14

sole purpose of considering the *Motion to Convert* and the

outcomes of the pending appeals.[2]  The court stated:

> Under 11 U.S.C. § 554(c), the closing of the case will
> abandon to the debtor the property of the chapter 7
> estate that she listed on her schedules pursuant to
> § 521(a)(1).  The revesting of title to such property in
> the debtor ought not be further delayed.  The debtor has
> received a discharge, and as part of her fresh start she
> should receive scheduled property that the trustee has
> determined is not worth administering, a determination
> leading to a presumption that the estate has been fully
> administered, which in turn is a presumption that has not
> been rebutted.

Effective as of the entry of that order on December 27, 2017,

Carvalho's interest in Elite, which had become property of the

bankruptcy estate, revested in her pursuant to 11 U.S.C. § 554(c)

---

[2]  As to closing the case and discharging Ross as trustee,
the court noted that under 11 U.S.C. § 350(a), "[a]fter an estate
is fully administered and the court has discharged the trustee,
the court shall close the case."  The court then stated:

> [Ross] has faithfully fully administered the chapter 7
> estate, as reflected by the court's denial of the motion
> to remove him as trustee and the denial of the motion to
> grant permission to sue him.  His status as a chapter 7
> trustee ought to be brought to an end and not be held in
> limbo pending the disposition of various matters,
> including the motion to convert the case to chapter 11
> and pending appeals.  Having fully rendered the services
> required of him, as will be signified by the entry of an
> order discharging him, Ross is entitled to receive from
> the clerk the amounts owed him under 11 U.S.C. § 330(b)
> and Item 9 of the Bankruptcy Court Miscellaneous Fee
> Schedule.  There is no just reason to delay discharging
> Ross and closing the chapter 7 case.

> Moreover, under 11 U.S.C. § 704(a)(1), Ross was
> required to "collect and reduce to money the property of
> the estate . . . and close such estate as expeditiously
> as is compatible with the best interests of parties in
> interest[.]"

and ceased to be property of the estate even upon the immediate
reopening of the case for disposition of the *Motion to Convert*.
This mooted Simu's continued refrain that the debtor's interest
in Elite was a valuable asset that ought to be sold for the
benefit of creditors: once the interest revested in Carvalho, it
was no longer property of the estate that could be sold for the
benefit of creditors.

The court reopened Carvalho's case immediately after closing
the case to permit Simu to pursue the *Motion to Convert*,
including her contention that Carvalho's postpetition earnings
could be a source to fund a Chapter 11 plan.[3]  Because, as a
result of the disposition of the adversary proceeding and closing
of Carvalho's case, Carvalho's interest in Elite was no longer an
asset of the bankruptcy estate, Simu's only possible claim for

---

[3]  The postpetition earnings would be property of the estate
if the case had been converted to Chapter 11.  The *Memorandum
Decision and Order Closing Case and Discharging Trustee*:

> ORDERED that as to Teodora Aureliana Simu's motion to
> convert the case to chapter 11 (and if Teodora Aureliana
> Simu succeeds in obtaining a conversion of the reopened
> case to chapter 11), 11 U.S.C. § 1115(a) will be applied
> as though this order had not been entered, with the
> result that under 11 U.S.C. § 1115(a)(1) and (2),
> respectively, "all property of the kind specified in
> section 541 that the debtor acquires after the
> commencement of the case" (including after entry of this
> order) and "all earnings from services performed by the
> debtor after the commencement of the case" (including
> after entry of this order) will be treated as property
> that would be property of the estate if the case is
> converted to chapter 11.

16

conversion of the case was that Carvalho's postpetition earnings
could fund a Chapter 11 plan.  While the court decided to reopen
Carvalho's case to allow Simu to pursue the *Motion to Convert* on
that theory, the issue already had been decided incident to the
*Motion to Dismiss for Bad Faith*; at that time, the court had
considered Simu's contention that Carvalho had the ability to
repay creditors, had examined Carvalho's financial condition, and
had held that Carvalho's earnings were insufficient to leave her
with any meaningful disposable income to pay to creditors.  For
that reason, the court had ruled that Carvalho's earnings did not
provide a basis for treating the Chapter 7 case as filed in bad
faith.

The court heard Simu's evidence on the *Motion to Convert* at
a trial of January 3, 2018. In continuing to pursue the *Motion to
Convert*, Simu provided no new evidence of Carvalho's ability to
fund a Chapter 11 plan, simply opting instead to rely on the same
evidence and arguments presented in litigating the adversary
proceeding and the *Motion to Dismiss Case for Bad Faith*.  Simu
therefore presented no justification for the court to abandon its
previous ruling that Carvalho's earnings did not provide her with
meaningful disposable income sufficient to make payments to
creditors.  Just as the evidence and arguments advanced by Simu
had not supported a finding of bad faith warranting dismissal of
the case, they did not support a finding of bad faith warranting

a conversion of the case to Chapter 11.  Therefore, without hearing any presentation of evidence by Carvalho, on the basis of the evidence and arguments raised by Simu, the court found, pursuant to Fed. R. Civ. P. 52(c), that the *Motion to Convert* had to be denied for the same reasons that warranted denial of the *Motion to Dismiss Case for Bad Faith*.

II

ANALYSIS

A.  Sanctions Pursuant to Fed. R. Bankr. P. 9011

Pursuant to Fed. R. Bankr. P. 9011(b),

By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

18

In filing Simu's *Motion to Convert*, LeFande, violated Rule 9011(b)(1) (improper purpose), Rule 9011(b)(2) (frivolous argument), and Rule 9011(b)(3) (allegations with no evidentiary support).  Monetary sanctions against him are warranted on those bases.

　　　1. Compliance with Rule 9011 Safe Harbor Provision

　　　Fed. R. Bankr. P. 9011(c)(1)(A) provides that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)" (laying out requirements for representations made to the court).  In terms of procedure, the *Motion for Sanctions* must be served on the party that is alleged to have violated Rule 9011(b) and may not be filed with or presented to the court unless, within 21 days of after service of the *Motion for Sanctions*, the party alleged to have violated Rule 9011(b) has not withdrawn or corrected the objectionable filing or representation made to the court.  *Id.*

　　　In this case, Carvalho served Simu with the *Motion for Sanctions* on October 17, 2017, triggering the safe harbor provision of Fed. R. Bankr. P. 9011(c)(1)(A), which granted Simu 21 days (until November 7, 2017) to withdraw her *Motion to Convert* (the document Carvalho asserted had been filed in violation of Rule 9011(b)).  Carvalho did not file her *Motion for Sanctions* or present it to the court at that time but she did

file a motion (Dkt. No. 154) requesting the court to shorten the
amount of time for Simu to respond to the *Motion for Sanctions* or
withdraw the *Motion to Convert*.  In response, the court ordered
that the deadline for Simu to respond to the *Motion for
Sanctions*, as set forth in Fed. R. Bankr. P. 9011(c)(1)(A), was
November 7, 2017, and ordered that unless Simu withdrew the
*Motion to Convert* by that date Carvalho could file her *Motion for
Sanctions* related to the *Motion to Convert* after the expiration
of the deadline.  *See* Dkt. No. 156.  Simu did not withdraw her
*Motion to Convert* and, on November 29, 2017, Carvalho filed her
*Motion for Sanctions* (Dkt. No. 187) and a memorandum in support
of that motion (Dkt. No. 188).

Simu contends in her opposition to Carvalho's *Motion for
Sanctions* that Carvalho failed to comply with the safe harbor
requirement because "[t]he Motion filed with the Court is not
even remotely the Motion served upon this Creditor.  The present
Motion filed is completely devoid of explanation or reasoning as
to why this Creditor's Motion to Convert would be improper."  *See*
Dkt. No. 194, at 3.  Carvalho filed on November 29, 2017, the
same *Motion for Sanctions* she had served on Simu on October 17,

2017.[4]  However, when Carvalho filed the *Motion for Sanctions*,
she also filed a memorandum in support of the *Motion for
Sanctions* (Dkt. No. 188), which she had not served on Simu
beforehand.

Rule 9011(c)(1)(A) requires a motion for Rule 9011 sanctions
served on an offending party to "describe the specific conduct
alleged to violate subdivision (b)" and dictates that the *Motion
for Sanctions* cannot be filed or presented to the court until 21
days elapse after service of the motion on the offending party.
The *Motion for Sanctions* served on LeFande without the additional
memorandum explained with sufficient specificity the reasons that
Carvalho found the filing of the *Motion to Convert* sanctionable
under Rule 9011.

Carvalho explained in the *Motion for Sanctions* that the
*Motion to Convert* raised the same issues the court had denied in
the adversary proceeding and in multiple orders denying motions
Simu had previously filed in the bankruptcy case, and alleged
that "[t]he conduct by Simu and Mr. LeFande is vexatious in
nature and designed solely for the purpose of multiplying and/or
delaying these proceedings, and to harass the Debtor and drive up

---

[4]  On December 15, 2017, Carvalho filed a reply to Simu's
opposition and attached thereto a copy of the papers served upon
LeFande, Simu's counsel, on October 17, 2017.  *See* Dkt. No. 195.
That copy, attached to the reply as Exhibit A, is identical to
the *Motion for Sanctions* filed with the court on November 29,
2017 (Dkt. No. 187).

her litigation expenses." Dkt. No. 187 ¶¶ 9-10. Carvalho also noted in the *Motion for Sanctions* that Simu had filed the *Motion to Convert* for an improper purpose, citing Simu's representation at the hearing held on October 5, 2017, that her objective in filing the *Motion to Convert* was to take Carvalho's interest in Elite. *See* Dkt. No. 187 ¶¶ 11-12.

Rule 9011(c)(1)(A) does not, by its terms, forbid the filing of an additional memorandum in support of the *Motion for Sanctions* when the *Motion for Sanctions* is filed with the court after the 21-day safe harbor period concludes. Additionally, the memorandum filed by Carvalho (Dkt. No. 188) in support of the *Motion for Sanctions* simply states in two pages the procedural history leading up to the filing of the *Motion for Sanctions* and incorporates Carvalho's *Opposition to Motion to Convert Case*, which was filed on the same day. Because Carvalho served the *Motion for Sanctions* itself on Simu in compliance with Rule 9011(c)(1)(A) and because the *Motion for Sanctions* gave Simu sufficient notice as to Carvalho's arguments regarding why the *Motion to Convert* was sanctionable pursuant to Rule 9011, Carvalho complied with the safe harbor provision of Rule 9011(c)(1)(A).

2.   Bases for Rule 9011 Sanctions

As already explained, the *Motion to Convert* was founded on the same unavailing arguments LeFande had relentlessly raised on

22

his client's behalf over the course of two years in both

Carvalho's bankruptcy case and the related adversary proceeding.

The court had already denied these arguments multiple times and

had even tried to explain to LeFande his fundamental

misunderstandings and misapplications of provisions of the

Bankruptcy Code.[5]  However, LeFande chose to ignore such

instruction and, instead, to characterize the court's rulings (in

a conclusory manner) as baseless "gymnastics" designed to aid

Carvalho's counsel.

In filing the *Motion to Convert*, LeFande chose to continue

pursuing the same claims that the court had already rejected in

dismissing Simu's adversary proceeding and in denying Simu's

*Motion to Dismiss Case for Bad Faith*.  In the memorandum in

support of the *Motion to Convert*, LeFande acknowledged that in

dismissing Simu's adversary proceeding complaint to deny Carvalho

a discharge and to declare Simu's claims nondischargeable, and in

denying the *Motion to Dismiss*, the court had already rejected

Simu's allegations that Carvalho had acted in bad faith in filing

the Chapter 7 case, that Carvalho had engaged in Bankruptcy Code

violations, and that Carvalho had engaged in fraud and

---

[5]  In issuing an oral decision at the conclusion of the
trial in the adversary proceeding on May 10, 2017, the court
specifically addressed provisions of the Bankruptcy Code relied
upon by LeFande that had no relevance to the proceeding,
including 11 U.S.C. §§ 330, 503, 704(a)(8), and 721.

concealment.[6]  LeFande therefore filed the *Motion to Convert* in an intentional, improper attempt to circumvent the court's prior decisions that necessarily doomed the *Motion to Convert*.[7] Sanctions under Rule 9011 are thus appropriate.

Similarly, LeFande acted improperly in continuing to pursue the *Motion to Convert* even after the court, in a written decision

---

[6]  As Simu stated in Simu's memorandum in support of the *Motion to Convert*:

> While this Creditor has properly sought dismissal for bad faith and nondischargeability for countless code violations, this Court has refused to take action in the face of overwhelming evidence of fraud and concealment. In light of the Court's refusal to dismiss, conversion is now appropriate.  See 11 U.S.C. § 109 (d) [sic] (eligibility criteria for Chapter 11).

Mem. at 2 (Dkt. No. 151 at 5).

[7]  In opposing the *Motion to Convert*, the United States Trustee noted:

> The U.S. Trustee is also concerned that the motion is an attempt to circumvent other orders entered by the Court. Ms. Simu already litigated an adversary complaint involving, in part, the value and the propriety of the Debtor's receipt of money from her business.  After hearing the evidence, the Court entered judgment for the Debtor. Adv. 16-10001, Dkt. No. 171. Ms. Simu also filed a Motion to Dismiss for Bad Faith, which focused on the Debtor's lifestyle and alleged ability to make payments to her creditors.  See Bankr. Dkt. No. 110 at 6-8. The Dismissal Motion was denied. Bankr. Dkt. No. 148.

> Ms. Simu now seeks to use the general conversion provision in § [706(b)] to gain the relief she tried and failed to obtain through the more specific provision in § [707(a)].

Dkt. No. 185 at 4-5.

denying Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*, had reemphasized all of the reasons Simu's allegations and legal arguments were unfounded. LeFande's unreasonable continued pursuit of the *Motion to Convert* despite every indication from the court in this written decision that his arguments could not succeed was not conduct addressed by Carvalho in the earlier-served *Motion for Sanctions*.[8] Nevertheless, LeFande's continued pursuit of the *Motion to Convert* after issuance of that written decision (which made even clearer that conversion to Chapter 11 was unwarranted) is relevant to the disposition of the *Motion for Sanctions* as evidence that the filing of the *Motion to Convert* was motivated by an improper purpose.

Federal Rule of Bankruptcy Procedure Rule 9011(b)(2) and (3) establish a reasonableness standard for the conduct of attorneys when filing papers in bankruptcy court.  Federal Rule of Bankruptcy Procedure 9011 is based on and substantially the same as Fed. R. Civ. P. 11, and case law interpreting the latter is therefore applicable to the former.  *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994).  The relevant question

---

[8]  Carvalho served her *Motion for Sanctions* on October 17, 2018.  She filed it on November 29, 2018, the same day that the court entered the written decision regarding denying Simu's *Motion to Remove Estate Trustee* and Simu's *Motion for Leave to Sue Estate Trustee*.

in assessing sanctions for violation of Rule 9011(b)(2) and (3)
is whether a reasonable attorney in like circumstances could
believe that his or her actions were factually or legally
justified. *See In re W.A.R. LLP*, No. 11-00044, 2012 WL 1576002,
at *16 (Bankr. D.C. May 4, 2012); *Cox v. Saunders (In re
Sargent)*, 136 F.3d 349, 352 (4th Cir. 1998) (quoting *Cabell v.
Petty*, 810 F.2d 463, 466 (4th Cir. 1987)).

A legal contention is unjustified when "a reasonable
attorney would recognize [it] as frivolous." *In re Sargent*, 136
F.3d at 352 (quoting *Forrest Creek Assocs. v. McLean Sav. & Loan
Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987)). As the Fourth
Circuit has noted, this means that a legal position violates Rule
11 if it "has 'absolutely no chance of success under the existing
precedent.'" *Id.* (citing *Brubaker v. City of Richmond*, 943 F.2d
1363, 1373 (4th Cir. 1991) (quoting *Cleveland Demolition Co. v.
Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987)); *Robeson
Defense Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 514-18
(4th Cir. 1990)).

Rule 9011 sanctions are appropriate to address "patent
misstatements of fact and law and [the] attempted re-argument of
defenses already ruled upon by the Court." *In re S. Indus.
Banking Corp.*, 91 B.R. 463, 465 (Bankr. E.D. Tenn. 1988). *See
also McLaughlin v. Bradlee*, 602 F. Supp. 1412 (D.D.C. 1985)
(finding Rule 11 sanctions appropriate to address the pursuit of

26

claims already adjudicated).  A reasonable attorney in like circumstances could not have believed it was factually or legally justified to file the *Motion to Convert*, advancing the same unavailing, meritless arguments that the court had already denied at least twice.

In the course of the adversary proceeding, the court ruled that Carvalho had not acted in bad faith or fraudulently in continuing to operate Elite throughout the bankruptcy proceedings.  The court ruled that Carvalho had acted in accordance with instructions from her counsel and permission from the Chapter 7 trustee.  The court also ruled that Carvalho's valuation of her interest in Elite as one dollar was an appropriate valuation made in good faith.  The court explained the appropriateness of the valuation extensively both in the course of the adversary proceeding, and in response to Simu's *Motion to Dismiss Case for Bad Faith*, all prior to the filing of the *Motion to Convert*.

In denying Simu's *Motion to Dismiss Case for Bad Faith* at the hearing held on October 5, 2017, other parties and the court itself repeated many of the court's previous holdings denying LeFande's arguments, demonstrating that LeFande's arguments were frivolous not only because they were based on fundamental misunderstandings of the Bankruptcy Code and bankruptcy proceedings but also because his arguments had already previously

been denied.  The court explained that Simu either failed to

understand or acknowledge that the Chapter 7 trustee lacked the

legal authority to seize Elite's assets by virtue of Elite's

status as a limited liability corporation (LLC), repeated

allegations of Carvalho's intentional undervaluation of her

interest in Elite and her bad faith in removing money from Elite

when the court had already ruled in the adversary proceeding that

the valuation was appropriate and that Carvalho had not

demonstratively acted in bad faith, and relied on case law that

could be distinguished as relating to a debtor's continued

operation of sole proprietorships as opposed to LLCs.

Regardless of the court's repeated attempts to explain to

LeFande why his arguments on behalf of Simu were unavailing,

within two weeks after the court's ruling of October 5, 2017, on

October 16, 2017, Simu filed her *Motion to Convert* premised on

the same rejected arguments.  Simu's *Motion to Convert* referenced

Carvalho's valuation of her interest in Elite as one dollar,

alleged that Carvalho "failed to make any semblance of a candid

and full disclosure of her affairs to Simu or the Court[,]" and

characterized the postpetition transfers of money from Elite to

Carvalho as "illegal" and a "profound fraud perpetrated on this

Court from the onset of this bankruptcy proceeding . . . ." *See*

Dkt. No. 151, at 6.  The court specifically dismissed all of

these allegations in the adversary proceeding related to this

28

case (Adv. Pro. No. 16-10001).  The court also dismissed all of
these allegations again at the hearing on Simu's *Motion to
Dismiss Case for Bad Faith* on October 5, 2017.

In the most clear demonstration of ignoring the court's
prior rulings, Simu emphasized the argument that Carvalho's
continued operation of Elite throughout her bankruptcy case was
illegal by citing *In re Nakhuda*, 14-41156-RLE, 45-46 (Bankr. N.D.
Cal. Apr. 27, 2015), and *Nakhuda v. Mansdorf (In re Nakhuda)*,
NC-14-1235-TaPaJu , 5-6 (B.A.P. 9th Cir. Mar. 2, 2015), which the
court had already advised on October 5, 2017, were easily
distinguished from Carvalho's case and therefore inapplicable.

In the *Motion to Convert*, Simu also noted that Carvalho "has
a business with assets, ongoing income, and a separate business
infrastructure making a Chapter Eleven reorganization
appropriate[,]" noting Carvalho's income for the year 2016 as
evidence of her ability to repay her debt to Simu.  The court
specifically addressed this argument in the hearing held on
October 5, 2017, and held that Carvalho's expenses were not
unreasonable and her income both before and after she filed her
petition, considering her regular expenses, did not enable her to
pay her debt to Simu.  In short, the court ruled that Carvalho
had not engaged in bad faith in filing a Chapter 7 case, as she
had no meaningful net disposable income.  That finding applied as
well to whether Carvalho had sufficient income to warrant

29

converting the case to Chapter 11.  The lack of bad faith on the part of Carvalho (demonstrated by her lack of meaningful disposable income) meant that just as there was insufficient basis for dismissing her bankruptcy case, there was insufficient basis for converting her bankruptcy case to Chapter 11.  Yet, LeFande plowed onwards with the *Motion to Convert.*

After LeFande filed the *Motion to Convert*, the court further explained the appropriateness of the valuation in ruling on Simu's *Motion to Remove Estate Trustee* and *Motion for Leave to Sue Estate Trustee*.  Yet LeFande continued to pursue the *Motion to Convert*.  LeFande continued to pursue the *Motion to Convert* even once the debtor's interest in Elite was abandoned to her by the closing of the case, and thus was no longer an asset of the estate that could be sold as estate property in a Chapter 11 case.  LeFande's continued pursuit of arguments previously rejected is evidence that warrants a finding that LeFande violated Rule 9011(b)(1) by filing the *Motion to Convert* for the improper purpose of venting his pique at having failed to succeed on his claims in the adversary proceeding and the *Motion to Dismiss Case for Bad Faith*, refusing to accept "no" as an answer, and intending to harass Carvalho and increase her costs of litigation.

When the court has not ruled in LeFande's favor in this case, he has continually attributed the "extraordinary" outcomes

to pervasive flouting of the Bankruptcy Code by the court, by the
U.S. Trustee, by the Chapter 7 trustee, and by Carvalho's
counsel, and to conspiracy to commit bankruptcy fraud (allegedly
involving all parties but never alleged in anything more than
conclusory terms).  Every bankruptcy professional involved in
this case advised LeFande that his claims were unfounded and
based on a fundamental misunderstanding of Bankruptcy Code
provisions.  Rather than making honest, reasonable inquiry into
those advisements, LeFande continued to advance the same
unavailing arguments, accompanied by the assertion that he was
the only one who was abiding by the Bankruptcy Code.  This cannot
be considered conduct that a reasonable attorney, similarly
situated, would undertake.  *See In re Sargent*, 136 F.3d 349, 352
(4th Cir. 1998) (counsel's reliance on a contrary view would be
frivolous for purposes of Rule 11 sanctions if "it can be said
that a reasonable attorney in like circumstances could not have
believed his actions to be legally justified." (brackets and
ellipses deleted)).

Based on the sheer number of times LeFande has repeated the
same frivolous arguments and the manner in which LeFande has
conducted himself in the courtroom and in his filings towards the
court, towards Carvalho, towards her counsel, and towards the
chapter 7 trustee and his counsel, it is evident that LeFande has

31

acted vexatiously with improper purpose.[9]  For all of these
reasons, the court finds that LeFande's filing of the *Motion to
Convert* warrants the imposition of sanctions pursuant to Rule
9011(b)(1)-(3).

   3. Award of Sanctions Against LeFande but not Simu

  Carvalho has failed to provide sufficient justification for
levying sanctions on Simu personally.  Pursuant to Fed. R. Bankr.
P. 9011(c)(2)(A), "[m]onetary sanctions may not be awarded
against a represented party for a violation of subdivision
(b)(2)."  Rule 9011(b)(2) requires representations to the court
to be "warranted by existing law or by a nonfrivolous argument
for the extension, modification, or reversal of existing law or
the establishment of new law[.]"  The court has already
determined that the filing of the *Motion to Convert* was

---

  [9] The court indicated the likelihood that LeFande filed the
*Motion to Convert* for an improper purpose or due to a
misunderstanding of the law in its memorandum decision regarding
the denial of Simu's *Motion to Remove Estate Trustee* and *Motion
for Leave to Sue Estate Trustee*.  *See* Dkt. No. 183, at 27 ("The
motion to convert appears to argue that the issue of pursuing a
cause of action regarding the postpetition distributions to
Carvalho from Elite should be revisited in the chapter 11 case
when Ross has already addressed that issue in chapter 7.  The
motion to convert the case to chapter 11 may thus be an attempted
maneuver around Simu's inability to obtain an order removing Ross
as trustee.  Simu cannot successfully convert the debtor's case
to a chapter 11 case for only this purpose.  In addition, the
grounds for converting the case to chapter 11 that Simu raises in
her motion to convert appear to rest on the erroneous assumption
that the assets of Elite are property of Carvalho's bankruptcy
estate.  For these reasons, Simu is unlikely to prevail in her
motion to convert Carvalho's chapter 7 case to a chapter 11
case.").

sanctionable not only pursuant to Rule 9011(b)(2) but also
pursuant to Rule 9011(b)(1) (improper purpose) and Rule
9011(b)(3) (allegations and factual contentions without
evidentiary support).  However, Carvalho has not demonstrated
that Simu was aware of the extent of LeFande's actions and the
sanctionable character of his multiple frivolous filings.
Clients may be subject to Rule 11 sanctions when they
misrepresent facts or otherwise "mastermind" a frivolous case.
*See Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001).
However, there is no indication that this case is such a
circumstance.

Where there is no evidence that the represented party
personally acted in bad faith or contributed to the manner in
which the case was handled, it is inappropriate to sanction the
represented party and the fault instead lies with the party's
counsel.  *See In re Ruben*, 825 F.2d 977 (6th Cir. 1987), *cert.
denied sub nom. Swan v. Ruben*, 485 U.S. 934 (1988).  *See also
Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co.*, 112
F.R.D. 355, 358 (S.D.N.Y. 1986) (finding that, where the facts
were relatively undisputed and the problem was primarily the
legal insufficiency of the theories advanced, "*prima facie*
responsibility for the Rule 11 violation falls upon counsel who
in contrast to their lay client are in a better position to
assess the strengths or weaknesses of legal theories of

recovery"). Because Carvalho has not demonstrated that Simu is personally sanctionable for the filing of the *Motion to Convert*, the court declines to levy sanctions on Simy personally.

> 4. Amount of Sanctions Pursuant to Rule 9011

According to Rule 9011(c)(2):

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

LeFande has demonstrated complete disregard for the facts and law in advancing the frivolous *Motion to Convert* on Simu's behalf, and has subjected Carvalho, the United States Trustee, and the court to unnecessary work in order to respond to the *Motion to Convert*. He has also demonstrated a shocking amount of hubris in clinging to the assertion that all bankruptcy professionals involved in this case and the related adversary proceeding have flouted the law and conspired against his client rather than consider whether his inexperience in the area of bankruptcy law resulted in pervasive misunderstanding of the provisions of the Bankruptcy Code and related case law. In order to deter similar conduct by LeFande in the future, and likewise to deter other attorneys from advancing frivolous arguments merely to keep a

bankruptcy case pending or to cause unnecessary expense for an opponent, the court will impose monetary sanctions against LeFande in the form of compensation for the costs, expenses, and attorneys' fees reasonably incurred by Carvalho as a direct result of the filing of the *Motion to Convert*.

B.   Sanctions Pursuant to 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 deals with a court's power "to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992). As the D.C. Circuit noted in *Wallace*, 964 F.2d at 1220 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)), § 1927 "imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim." Advancing frivolous arguments already rejected by a court justifies a finding of bad faith on the part of the movant. *See LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (sanctioning conduct that was "plainly inconsistent with the previous district court order");

35

*Robertson v. Cartinhour*, 883 F. Supp. 2d 121, 125 (D.D.C. 2012),

*aff'd*, 554 F. App'x 3 (D.C. Cir. 2014) (finding that an attorney

was subject to sanctions under § 1927 when he "persisted in

vigorously litigating *Robertson II* even after the jury's findings

in *Robertson I* made clear that the allegations in *Robertson II*

were baseless"); *Reynolds v. U.S. Capitol Police Bd.*, 357 F.

Supp. 2d 19, 26 (D.D.C. 2004) ("Ignoring both Judge Urbina's

ruling in *Thompson I*, which was upheld by our circuit court, and

Judge Robertson's ruling regarding the Johnson Reynolds

complaint, they have nonetheless persisted in alleging claims

without any reasonable factual or legal basis to support this

Court's jurisdiction over such claims.").

After having unsuccessfully pursued the adversary proceeding

and the *Motion to Dismiss Case for Bad Faith*, LeFande multiplied

the proceedings by filing and pursuing the *Motion to Convert*,

renewing claims the court had already rejected in dismissing

Simu's adversary proceeding and denying the *Motion to Dismiss*

*Case for Bad Faith*.  The evidence is clear and convincing that

LeFande acted in bad faith in pursuing those arguments already

rejected by the court, refusing to adhere to the court's prior

rulings, acting primarily due to his pique at having failed to

succeed in the adversary proceeding and his pursuit of the *Motion*

*to Dismiss Case for Bad Faith*, and intending to harass Carvalho

and increase her costs of litigation.  His pursuit of the *Motion*

36

*to Convert* was thus an unreasonable and vexatious multiplication of the proceedings in the bankruptcy case.

As already described in detail in this memorandum decision in regards to Rule 9011 sanctions, Simu's *Motion to Convert* was frivolous and inconsistent with the court's prior rulings, and LeFande's decision to file the *Motion to Convert* and continue to pursue the motion despite additional rulings by the court indicating his inability to succeed on the motion unreasonably and vexatiously multiplied the proceedings at great cost to Carvalho, the United States Trustee, and the court.  For that reason, LeFande's filing of the *Motion to Convert* is also sanctionable pursuant to § 1927.  Under § 1927, sanctions may only be assessed against an attorney, so sanctions may not be assessed against Simu herself pursuant to § 1927.  *See Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993); *Smith Int'l, Inc. v. Texas Commerce Bank, N.A.*, 844 F.2d 1193, 1197 (5th Cir. 1988).  The court finds that the amount of sanctions levied against LeFande pursuant to Rule 9011, discussed above, are sufficient.

C.  Sanctions Pursuant to the Court's Inherent Authority

Because the court has found that LeFande acted in bad faith, the court concludes that sanctions against LeFande pursuant to the court's inherent authority are appropriate for his filing of the *Motion to Convert*.  As explained in regards to whether Simu

37

should be sanctioned personally pursuant to Rule 9011, Carvalho

has not presented sufficient justification for the court to levy

sanctions against Simu personally pursuant to its inherent

authority.  The court therefore declines to do so.

III

CONCLUSION

An order follows granting Carvalho's *Motion for Sanctions*

(Dkt. No. 187).  Pursuant to that order, Carvalho will be

directed to file a bill of costs demonstrating the reasonable

expenses and attorneys' fees incurred in opposing Simu's *Motion

to Convert*.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.